# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASSANDRA M. MENOKEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 16-0083 (ABJ) |
| ) | Civil Action No. 16-0084 (ABJ) |
| KATHLEEN MCGETTIGAN ) | |
| *Acting Director, United States Office of* ) | |
| *Personnel Management, et al.*, ) | |
| ) | |
| Defendants.[1] ) | |

## <u>MEMORANDUM OPINION</u>

On January 15, 2016, plaintiff Cassandra M. Menoken, who has filed a case against the United States Office of Personnel Management ("OPM") in this court previously, Am. Compl. [No. 1:03-cv-01775, Dkt. # 8] (referred to in this opinion as "*Menoken I* Compl."), filed two more lawsuits proceeding *pro se*: one against OPM and the Social Security Administration ("SSA"), and the other against OPM and the United States Department of Health and Human Services ("HHS"). In one case, plaintiff alleges that OPM and SSA violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), by retaliating against her because she engaged in protected activity. Am. Compl. [No. 1:16-cv-0084, Dkt. # 9] ("*Menoken II* Compl.") ¶ 1. In the second case, she alleges that OPM and HHS violated Title VII by discriminating against her based on her race, and retaliating against her because she engaged in protected activity. Am.

---

1       Plaintiff's complaints named former Acting Director of the United States Office of Personnel Management, Beth Cobert. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes her successor as defendant.

Compl. [No. 1:16-cv-0083, Dkt. # 8] ("*Menoken III* Compl.") ¶ 1.  Plaintiff's claims all arise out of her attempt to become an Administrative Law Judge ("ALJ").

On October 11, 2016, defendants filed a consolidated motion to dismiss plaintiff's complaints under Federal Rule of Civil Procedure 12(b)(6), arguing that:  (1) plaintiff's claims in *Menoken II* are barred under the doctrines of *res judicata* and issue preclusion, and (2) plaintiff has failed to allege sufficient facts in *Menoken III* to state claims of discrimination and retaliation. Defs.' Mot. to Dismiss [No. 1:16-cv-0084, Dkt. # 11] ("Defs.' Mot."); Mem. of P. & A. in Supp. of Defs.' Mot. [No. 1:16-cv-0084, Dkt. # 11-1] ("Defs.' Mem."); Defs.' Mot. [No. 1:16-cv-0083, Dkt. # 10]; Defs.' Mem. [No. 1:16-cv-0083, Dkt. # 10-1].  On October 31, 2016, plaintiff opposed defendants' motion, Pl.'s Consolidated Mem. in Opp. to Defs.' Mot. [No. 1:16-cv-0084, Dkt. # 14] ("Pl.'s Opp."); Pl.'s Opp. [No. 1:16-cv-0083, Dkt. # 13], and defendants have replied.  Defs.' Reply in Supp. of Defs.' Mot. [No. 1:16-cv-0084, Dkt. # 15] ("Defs.' Reply"); Defs.' Reply [No. 1:16-cv-0083, Dkt. # 14].

After considering the parties' submissions, the Court will grant defendants' motion to dismiss plaintiff's retaliation claim against OPM and SSA in *Menoken II* because it is precluded under the doctrines of *res judicata* and issue preclusion.  The Court will also grant defendant's motion to dismiss plaintiff's retaliation claim against HHS, but it will deny the motion to dismiss plaintiff's claim of retaliation against OPM and plaintiff's claim of discrimination against OPM and HHS in *Menoken III*.

## BACKGROUND

### I.    Factual Background

Plaintiff is an African American female living in Washington, D.C., who has been applying for an ALJ position since 1993.  *Menoken III* Compl. ¶ 4.  The ALJ application process includes a

competitive examination administered by OPM, the results of which are then used by agencies seeking to hire ALJs. *See id.* ¶¶ 16, 31.

OPM has exclusive control over the process used to refer applicants to be considered for ALJ positions. *Menoken III* Compl. ¶ 5. OPM maintains an "ALJ Register" that ranks applicants in descending order based on their examination scores. *Id.* ¶ 16. Upon request, OPM provides "certificates of eligibles" to agencies looking to hire ALJs. *Id.* ¶ 31. These certificates contain names of applicants based on their ALJ examination score ranking and their geographic availability, and they usually list at least three applicants for each vacancy an agency is seeking to fill. *Id.* ¶¶ 32–33.

In 1993, plaintiff took the ALJ examination administered by OPM. *Menoken II* Compl. ¶ 4. OPM then created an ALJ Register using the scores of applicants who had completed the 1993 ALJ examination, and that ALJ Register was used for the next fourteen years until it was replaced in 2007 based on the results of a new examination. *Id.* ¶¶ 16, 22.

In March 2001, OPM issued a certificate to SSA containing the names of eligible candidates for ALJ positions that SSA was seeking to fill. *Menoken II* Compl. ¶ 36. The certificate was based on the 1993 rankings. *Id.* ¶ 22. SSA then used this certificate to make ALJ selections in April 2001, and communicated offers to selectees in September 2001. *Id.* ¶ 54. Plaintiff's name was not on the certificate for consideration. *See id.* ¶ 39.

In 2005, OPM compiled four certificates of eligibles for HHS, which was seeking to hire a total of fifty ALJs for assignment to four locations. *Menoken III* Compl. ¶ 38. Instead of issuing one certificate with potential ALJ candidates, which plaintiff describes as the typical method, OPM gave HHS "four small ALJ certificates" – one for each geographic location. *Id.* ¶¶ 44, 46. Each certificate listed candidates in order of their ALJ examination scores and their geographic

availability.  *Id.* ¶ 32.  Even though plaintiff had indicated that she was available for all four of the geographic locations involved, her name was not on any of the certificates.  *See id.* ¶¶ 38, 49. Plaintiff claims that had the "normal practice" been used, her name would have been included on the single large certificate for ALJ consideration because that list would have included at least 150 ALJ candidates.  *Id.* ¶ 45.[2]

## II.    Related Cases

Plaintiff has sued OPM before.  She filed a complaint with the Equal Employment Opportunity Commission ("EEOC") in 1994, and then brought an action in the U.S. District Court for the District of Columbia in 2003.  Both proceedings have been resolved.

### A.    *Menoken v. OPM*, EEOC No. 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X ("EEOC Action")

After plaintiff took the ALJ examination in 1993, she filed a formal charge with the EEOC against OPM in May of 1994.  *See* Ex. 1 to Defs.' Mot. [No. 1:16-cv-0084, Dkt. # 11-2] ("EEOC Order") at 1; *see also Menoken v. Whipple*, 605 F. Supp. 2d 148, 150 (D.D.C. 2009) (describing the procedural history of plaintiff's case).  Plaintiff alleged that the ALJ examination and selection process violated Title VII by discriminating against African American and female applicants through its design and implementation.  EEOC Order at 3.  Specifically, plaintiff claimed that several of the examination components,[3] including many of the Supplemental Qualification Statement ("SQS") benchmarks used to award points to exam takers, had a disparate impact on African American and female applicants.  *Id.* at 1–2, 49.

_____

2        The Court must take plaintiff's allegation as true on its face, but notes that it does not know if plaintiff would have in fact been listed in the top 150 ALJ candidates.

3        The ALJ examination has four components:  (1) the Supplemental Qualifications Statement ("SQS"); (2) the Personal Reference Inquiry ("PRI"); (3) the Written Demonstration ("WD"); and (4) the Panel Review ("PR").  EEOC Order at 4–5.

On November 9, 2000, the Administrative Judge presiding over the case found that the "partner benchmark" used in the SQS portion of the ALJ examination violated Title VII. EEOC Order at 53. This component, which awarded points to applicants who were partners at large law firms, was found to create an "adverse impact on the basis of race." *Id.* at 50. The remainder of plaintiff's discrimination claims were rejected by the Administrative Judge. *Id.* at 61. The Administrative Judge ordered OPM to "cease use of that benchmark" and to stop relying on it during the ALJ hiring process. *Id.* OPM was required to review the scores of all applicants on the 1993 ALJ Register, adjust their scores and rankings if they had been affected, and notify agencies using the 1993 ALJ Register of the discriminatory benchmark and the EEOC Order. *Menoken III* Compl. ¶¶ 17–19, 21.

In August and September 2001, plaintiff filed two appeals with the EEOC, alleging that OPM had failed to comply with the EEOC's Order and that the Administrative Judge had erroneously rejected her other claims. *See* Defs.' Mem. at 4; *Whipple*, 605 F. Supp. 2d at 151. The EEOC rejected the appeals in May 2003. Defs.' Mem. at 4; *Whipple*, 605 F. Supp. 2d at 151. Plaintiff then sought reconsideration of the EEOC's May 2003 decision, but because she filed a civil action in the U.S. District Court for the District of Columbia also alleging that OPM had not properly implemented the EEOC's Order, the EEOC dismissed the request for reconsideration. Defs.' Mem. at 5.

### B. *Menoken v. Whipple*, 605 F. Supp. 2d 148 (D.D.C. 2009) ("*Menoken I*")

In August 2003, plaintiff brought an action in the U.S. District Court for the District of Columbia, alleging that OPM was in "willful violation" of the EEOC Order and that OPM's administration of the ALJ selection process unlawfully discriminated against African American and female applicants in violation of Title VII under the theories of disparate impact and disparate

treatment. *Menoken I* Compl. ¶¶ 1–3; *Whipple*, 605 F. Supp. 2d at 151–52. In March 2009, the court granted summary judgment for OPM on all counts. *Whipple*, 605 F. Supp. 2d at 156. The court held that OPM was in compliance with the EEOC Order to eliminate the partner benchmark component from the ALJ examination, and that there was insufficient evidence of discrimination to support the disparate impact and disparate treatment claims to survive summary judgment. *Id.* at 152.

### C. *Menoken v. Cobert, et al.*, No. 1:16-cv-00084 (D.D.C. 2016) ("*Menoken II*")

On January 15, 2016, plaintiff filed two complaints with this Court, and she filed an amended complaint in each case on August 23, 2016. *Menoken II* Compl.; *Menoken III* Compl. The first, *Menoken v. Cobert, et al.*, No. 1:16-cv-0084, asserts Title VII retaliation claims against OPM and SSA. *Menoken II* Compl. ¶ 1. Plaintiff alleges that in March 2001, OPM and SSA manipulated the ALJ selection process to deny plaintiff consideration for an ALJ position because she was a party in the 1994 EEOC Action. *See id.* ¶¶ 40–41, 55; *see also id.* at 11. Specifically, plaintiff claims that "OPM was determined to do whatever necessary to ensure that [p]laintiff would not benefit from her success" in the EEOC Action and that SSA was a "willing and like-minded partner." *Id.* ¶¶ 40–41.

### D. *Menoken v. Cobert, et al.*, No. 1:16-cv-00083 (D.D.C. 2016) ("*Menoken III*")

In the second action filed on January 15, 2016, *Menoken v. Cobert, et al.*, No. 1:16-cv-0083, plaintiff brings Title VII discrimination and retaliation claims against OPM and HHS. *Menoken III* Compl. ¶ 1. Plaintiff alleges that because she was a party in the 1994 EEOC Action, OPM and HHS retaliated against her in 2005 by deviating from the normal selection process in creating "four small ALJ certificates" instead of one large certificate with at least 150 ALJ candidate names. *Id.* ¶¶ 42, 44–49. Plaintiff claims that she would have been considered for the

ALJ position if defendants had used the "normal practice" of a single list. *Id.* ¶ 45. Plaintiff also brings a discrimination claim under a disparate impact theory, alleging that the alleged deviation from the normal selection process "had the residual effect of depriving [plaintiff] and other African American ALJ applicants of their right to be considered for ALJ positions." *Id.* at 8–9.

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all

inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

Where the action is brought by a *pro se* plaintiff, a district court has an obligation "to consider his filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).[4]

## ANALYSIS

**I.    Plaintiff's retaliation claim against OPM in *Menoken II* is barred by the doctrine of *res judicata*.**

"Under *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980), citing *Cromwell v. Cty. of Sac.*, 94 U.S. 351, 352 (1876); *SBC Commc'ns, Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) ("[A] party who once has had *a chance to* litigate a claim before an appropriate tribunal usually ought not to have another chance to do so.") (emphasis in original), quoting Restatement (Second) of Judgments § 6 (1982). Therefore, a party cannot escape the preclusive effect of the doctrine by raising a different legal theory or seeking a different remedy that was available to her in the prior action. *See U.S. Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (adopting "the Restatement (Second) of Judgments' pragmatic, transactional approach," which "reflects a trend 'in the direction of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence'") (citation omitted), quoting 1B J. Moore, Moore's Federal

---

4    Though plaintiff is an attorney, and despite the fact that a *pro se* attorney "is presumed to have a knowledge of the legal system and need less protections from the court," *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 234 (D.D.C. 2007), the Court construes plaintiff's filings liberally in light of her *pro se* status.

Practice ¶ 0.410[1] at 359 (2d ed. 1983). Defendants maintain that plaintiff's retaliation claim against OPM in *Menoken II* is barred by the doctrine of *res judicata*, also known as claim preclusion. Defs.' Mem. at 14–16. The Court agrees.

A subsequent lawsuit will be precluded if "there has been prior litigation (1) involving the same claims or cause of action (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006). To determine whether the facts of two cases are similar enough to constitute the same "cause of action," courts must consider whether the lawsuits turn on the same "nucleus of facts." *Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002), quoting *Page v. United States*, 729 F. Supp. 818, 820 (D.C. Cir. 1984). This involves an assessment of "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co.*, 723 F.2d 944, 949 n.5 (D.C. Cir. 1983), quoting 1B J. Moore, Moore's Federal Practice ¶ 0.410[1] (2d ed. 1983).

This case warrants the application of *res judicata*. First, *Menoken I* and *Menoken II* involve the same parties. Second, plaintiff's current retaliation claim could have been brought against OPM in *Menoken I* since the claims in both cases arise out of the same factual circumstances.

In *Menoken I*, plaintiff alleged:

> In March 2001, OPM "used" the discriminatory scoring benchmark when it forwarded a "certificate of eligibles" to the Social Security Administration (SSA). . . . In September 2001 OPM again "used" the discriminatory scoring benchmark by facilitating SSA's ability to make ALJ appointments from the tainted March 2001 certificate.

*Menoken I* Compl. ¶¶ 59, 62. In *Menoken II*, plaintiff similarly alleges:

> OPM had issued an ALJ certificate to SSA in March 2001. . . . SSA used the certificate to make ALJ selections in April 2001 and communicated

offers to the selectees in September 2001. . . .  OPM and SSA manipulated the selection process to enable SSA to hire 120 ALJs without having to consider [p]laintiff's presumptive entitlements in [the EEOC Action].

*Menoken II* Compl. ¶¶ 49, 54–55.  In both cases, plaintiff addresses OPM and SSA's use of the March 2001 certificate to recommend and hire ALJs in September 2001.  She also includes factual allegations about her 1994 EEOC Action in both complaints.  *Menoken I* Compl. ¶ 8; *Menoken II* Compl. ¶ 10.  Thus, all of the facts forming the basis of plaintiff's retaliation claim against OPM in *Menoken II* were present in her *Menoken I* complaint.

The court granted OPM's motion for summary judgment in *Menoken I*, which constitutes a final judgment on the merits with *res judicata* effect.  *Prakash v. Am. Univ.*, 727 F.2d 1174, 1182 (D.C. Cir. 1984) ("As a decision on the merits, a summary judgment merges or bars the action for res judicata purposes.").  Plaintiff had an opportunity to litigate any legal claims against OPM arising from the ALJ hiring process in 2001, and she chose to base her 2003 case on discrimination alone.  Because any retaliation claim against OPM based on those facts could have – and should have – been raised by plaintiff in *Menoken I*, plaintiff's action against OPM in *Menoken II* is barred by the doctrine of *res judicata*.  Therefore, the Court will grant defendants' motion to dismiss plaintiff's retaliation claim against OPM.

## II.    Plaintiff's retaliation claim against SSA in *Menoken II* is barred by issue preclusion.

The Social Security Administration was not a defendant in the first action, but defendants contend that plaintiff's retaliation claim against the agency in *Menoken II* is barred by the doctrine of issue preclusion.  Defs.' Mem. at 16–18.

Under the doctrine of issue preclusion, "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case."  *Allen*, 449 U.S. at 94, citing *Montana v. United*

*States*, 440 U.S. 147, 153 (1979). A prior determination of an issue has preclusive effect if three conditions are met:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992). However, "[t]he very heart of the collateral estoppel doctrine is the requirement that the issue to be precluded must be substantially the same as the issue previously litigated." *Schneider v. Lockheed Aircraft Corp.*, 658 F.2d 835, 852 (D.C. Cir. 1981), citing *Montana*, 440 U.S. at 155. Thus, because SSA was not a party in *Menoken I*, the determinations made in that case would have preclusive effect in *Menoken II* only if those determinations were substantively identical to plaintiff's current claim against SSA.

Plaintiff labels her claim against SSA as a cause of action for retaliation, but she does not allege that the agency took any particular action – such as requesting a certificate from OPM – in retaliation for her protected activity. Instead, what she alleges is that SSA and OPM were colluding against her to engage in a pattern of discovery abuses during the relief phase of her original EEOC proceeding, in an effort to hide the fact that OPM was not in compliance with the 2000 EEOC Order.

Plaintiff states that she became aware of this conduct while the EEOC matter was still pending. *Menoken II* Compl. ¶ 49. She claims that the agencies' failure to disclose the ALJ certificate issued by OPM to SSA in March of 2001 (which did not include her name) concealed the fact that OPM was violating the terms of the EEOC Order, in particular, the provision that required the agency to adjust her score. *Id.* ¶¶ 36–41. Since plaintiff was not listed on the

certificate, she was not considered for a position at Social Security. *See id.* ¶¶ 54–55. But in

plaintiff's view, given her victory at the administrative level and the Administrative Judge's order,

she was "presumptively entitled to priority consideration and/or placement in an ALJ position in

2001," *id.* ¶ 58; *see also id.* ¶ 32, and the agencies' obstructive conduct enabled OPM to

"circumvent plaintiff's presumptive entitlements." *Id.* ¶¶ 36–48.

But plaintiff already specifically alleged in Count I of *Menoken I* that OPM violated Title

VII "by repeatedly and deliberately failing to comply with EEOC Orders." *Menoken I* Compl. at

11. After extensive discovery, the court entered summary judgment in favor of OPM and

conclusively found that OPM *did* comply with the EEOC Order. *See Whipple*, 605 F. Supp. 2d at

151–52. Since the issue of whether OPM complied with the EEOC Order has already been

decided,[5] there is nothing left to plaintiff's claim that SSA somehow facilitated or conspired in an

alleged lack of compliance.

Moreover, preclusion of re-litigating this issue does "not work a basic unfairness" to

plaintiff in any way because plaintiff has already had her opportunity to litigate this issue fully

against OPM, and OPM had every incentive to litigate the issue to finality in the first case. *See*

*Yamaha Corp.*, 961 F.2d at 254. Therefore, plaintiff's claim against SSA in *Menoken II* is

---

5       Defendant points out that the EEOC came to the same conclusion in its 2013 decision.
Defs.' Mem. at 7–8. In that EEOC proceeding, plaintiff "characterized her claim as 'whether
OPM, with the active and willing assistance of SSA, manipulated the ALJ certification process in
2001 in a manner designed to ensure [plaintiff] would not receive equitable relief as a result of her
status as a prevailing party in a 1994 discrimination complaint against OPM.'" *Id.* at 7, quoting
*Menoken v. Archuleta*, EEOC No. 012012091, 2013 WL 6623020, at *13 (Dec. 2, 2013). The
EEOC ruled that plaintiff could not reargue whether OPM complied with the Administrative
Judge's order in 2000 because the district court, and the D.C. Circuit, had "already ruled that OPM
complied with the relief ordered." *Id.* at 8, quoting *Archuleta*, 2013 WL 6623020 at *14. The
only issue the EEOC considered was plaintiff's allegation that SSA and OPM had retaliated against
her when SSA amended its request for a certificate of eligible ALJ candidates to exclude
Washington, D.C. *Id.* However, plaintiff does not appear to raise this issue in her complaint here.

precluded by the court's findings in *Menoken I*, and defendants' motion to dismiss the claim against SSA on that basis will be granted.

### III. Plaintiff has stated a claim of discrimination against OPM and HHS in *Menoken III*.

Under Title VII, the federal government is required to make "[a]ll personnel actions affecting employees or applicants for employment . . . free from any discrimination based on race." 42 U.S.C. § 2000e-16(a). A plaintiff can prove that she was not hired because of her race under a disparate treatment theory, by demonstrating that her employer's conduct was motivated by discriminatory intent, or under a disparate impact theory, by showing that even if the employment practice was not intended to discriminate, it "in fact [had] a disproportionately adverse effect on minorities." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *Anderson v. Zubieta*, 180 F.3d 329, 338 (D.C. Cir. 1999) (observing that disparate impact claims of discrimination "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity"), quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 n.15 (1977). Proof of discriminatory motive is not required under a disparate impact theory. *Int'l Bhd. of Teamsters*, 431 U.S. at 336 n.15.

Plaintiff claims that defendants violated Title VII by using an unlawful ALJ referral practice that disproportionately disqualified African American applicants, including plaintiff, from being considered for ALJ positions. *Menoken III* Compl. at 8–9. Defendants argue that plaintiff's discrimination claim should be dismissed under Rule 12(b)(6) because it fails to state a claim upon

which relief can be granted. Defs.' Mem. at 18–21. The Court finds that the allegations in plaintiff's complaint are sufficient to survive a motion to dismiss.

"[A] plaintiff establishes a prima facie disparate-impact claim by showing that the employer 'uses a particular employment practice that causes a disparate impact' on one of the prohibited bases." *Lewis v. City of Chi.*, 560 U.S. 205, 212 (2010), quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i). To carry this burden, a plaintiff must "identify[] the specific employment practice that is challenged," and prove causation by offering "statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988). When filing a complaint, a plaintiff need not plead every element of the prima facie case in order to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). But, it is "not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 241 (2005).

Considering the fact that plaintiff is proceeding *pro se*, the Court finds that plaintiff's allegations satisfy this standard. *See Haines*, 404 U.S. at 520–21. Plaintiff claims that she was not considered for an ALJ position because of OPM's decision to issue four separate certificates of eligible candidates for four geographic regions instead of compiling one certificate. *Menoken III* Compl. ¶¶ 44–48. OPM's method of using multiple certificates when it was referring ALJ candidates to HHS constitutes an employment practice in the disparate impact context. *See Lewis*, 560 U.S. at 212 (holding that the term "employment practice" in Title VII is not defined, but encompassed city's conduct when, in selecting applicants to advance in the hiring process, it excluded passing applicants who scored below a certain threshold on the qualification

14

examination).  Therefore, plaintiff has identified an employment practice with enough specificity to survive a motion to dismiss.

Plaintiff's allegations with respect to the impact of this practice are somewhat conclusory, but at this stage, they are barely sufficient to create an inference of causation.  Plaintiff claims that "larger certificates allowed OPM to reach into the lower ranks of the ALJ Register," which "made it easier for agencies to consider African American candidates because, as a group, they tended to be clustered at the lower ranks of the Register due to lower examination scores."  *Menoken III* Compl. ¶¶ 34–35.  Further, she alleges that using four certificates rather than one allowed OPM "to avoid going too deep into the Register to reach [p]laintiff's score," and that "[a]voiding lower scores on the Register had the further effect of limiting the number of African American candidates HHS would consider."  *Id.* ¶ 48.  These allegations suggest that the use of four separate certificates had the effect of disproportionately disqualifying African American applicants, including plaintiff, from being considered for an ALJ position.  Therefore, plaintiff has alleged sufficient facts to state a cognizable claim, and the motion to dismiss plaintiff's discrimination claim against OPM and HHS in *Menoken III* will be denied.  *See Lewis*, 560 U.S. at 212 (holding that the allegation that defendants excluded certain applicants below a certain score "caused a disparate impact . . . stated a cognizable claim").  Plaintiff will now have to prove these allegations, though, and come forward with the necessary statistical evidence, and this ruling should not be interpreted as expressing any view as to whether these claims will survive summary judgment.

## IV.    Plaintiff has stated a claim of retaliation against OPM, but not against HHS in *Menoken III*.

Plaintiff also claims that defendants retaliated against her in violation of Title VII by "engaging in acts designed to ensure [she] would not be considered for an ALJ position in 2005 because she had prevailed in a Title VII claim against OPM" – her 1994 EEOC Action.  *Menoken*

*III* Compl. at 8.  Defendants move to dismiss this claim under Rule 12(b)(6) as well.  Defs.' Mem. at 18–21.

Title VII's anti-retaliation provision makes it unlawful for "an employer [to] 'discriminate against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a); *see Baird v. Gotbaum*, 792 F.3d 166, 168 & n.1 (D.C. Cir. 2015) (confirming that the general ban on retaliation in section 2000e-3(a) applies to federal employers through section 2000e-16).  In order to establish a prima facie case of retaliation, plaintiff "must show (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two."  *Taylor v. Small*, 350 F.3d 1286, 1292 (D.C. Cir. 2003).[6]  However, a "plaintiff alleging a retaliation claim faces a low hurdle at the motion to dismiss stage," *Winston v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2011), and does not need to plead each element of her prima facie case.  *See Swierkiewicz*, 534 U.S. at 515.

---

6      When "the plaintiff claims that the retaliation took the form of failure to hire, the plaintiff must also show (4) that [she] applied for an available job; and (5) that she was qualified for that position."  *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (citations omitted).  Here, plaintiff's "failure to consider" claim is very similar to a "failure to hire" claim, and defendants contend that plaintiff has not sufficiently pled that she was qualified for the job.  Defs.' Mem. at 20.  In 2005, HHS was seeking to hire ALJs in four geographic locations for which plaintiff was available.  *Menoken III* Compl. ¶ 38.  Plaintiff's name was on the ALJ Register at that time because she had participated in OPM's application process and completed the necessary ALJ examination.  *Id.* ¶¶ 4, 23.  Plaintiff alleges that "[t]he normal practice when filling ALJ vacancies in multiple locations had been for OPM to prepare one certificate," *id.* ¶ 44, and that if OPM had used its normal practice, HHS "would have been in a posture to consider at least 150 ALJ candidates and [p]laintiff would have been one of them."  *Id.* ¶ 45.  By claiming that she would have been on the larger list, plaintiff has sufficiently pled that she was qualified for an ALJ position.  But plaintiff will have to prove this allegation to survive summary judgment.

Defendants do not seem to contest that plaintiff engaged in statutorily protected activity or that she suffered an adverse action. *See* Defs.' Mem. at 19–21. They only argue that plaintiff has failed to plead that there is a "causal connection between her protected activity and the alleged improper action." *Id.* at 20. The Court finds that plaintiff has put forth sufficient allegations against OPM to survive a motion to dismiss, but it concludes that plaintiff's claim against HHS is full of conclusory assertions that do not give rise to a retaliation claim.

To succeed in a retaliation case, a plaintiff must show a causal connection between the protected activity and the complained of action. And courts in this district have sustained complaints at the Rule 12(b)(6) stage when the plaintiff has merely alleged that he or she was subjected to an adverse action "because of" protected activity. *See, e.g.*, *Ndzerre v. Wash. Metro. Area Transit Auth.*, 174 F. Supp. 3d 58, 65–66 (D.D.C. 2016) (finding plaintiff's allegations that he was required to perform additional duties without compensation because he participated in the EEOC complaint process was enough to "nudge" his claims past the motion to dismiss stage); *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 323 (D.D.C. 2016) (concluding that plaintiff sufficiently pled causation by alleging that she was disciplined after complaining about discriminatory treatment, even though she did not allege that the supervisors involved in the discrimination complaints were the same supervisors who engaged in the retaliatory conduct); *Jones v. Bernanke*, 685 F. Supp. 2d 31, 39–40 (D.D.C. 2010) (finding that plaintiff's allegation that his performance evaluation was given in retaliation for his involvement in protected activity was sufficient to meet the pleading standard); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 32 (D.D.C. 2010) (acknowledging that plaintiff could have pled the connection between the protected activity and adverse action with greater specificity, but had done enough to survive a motion to dismiss by

claiming that "as a result of having engaged in a protected activity . . . he suffered retaliation in the form of reassignment").

The Court is not certain that the legal proposition applied in these cases is consistent with *Iqbal*, 556 U.S. 678. The opinions rely on a sentence in *Rochon v. Gonzales*, in which the D.C. Circuit stated, "in order to survive a motion to dismiss, all the complaint has to say is 'the government retaliated against me because I engaged in protected activity.'" 438 F.3d 1211, 1220 (D.C. Cir. 2006), quoting *Sparrow v. United Airlines, Inc.*, 216 F.3d 111, 1114 (D.C. Cir. 2000). But this comment seems to have been lifted out of context and given too much significance and, in any event, it was based upon precedent that applied *Conley v. Gibson*, 355 U.S. 41 (1957), and

not *Iqbal*.[7] So notwithstanding the comment in *Rochon*, there is no authority in this Circuit holding that the pleading standards of *Iqbal* do not apply in retaliation cases.

To prove causation, a plaintiff may show that "the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Baldrige*, 759 F.2d at 86. Defendants argue that "plaintiff has not plausibly alleged an inference of [a] . . . causal connection between her protected activity and the alleged improper

---

7     The problem in *Rochon* was that the district court had dismissed a complaint for failure to state a claim on the grounds that the plaintiff had not adduced evidence to show that the adverse action would not have occurred but for his protected activity. 438 F.3d at 1220. The Court of Appeals held that the plaintiff was not required to meet this standard and rebut the defense at the Rule 12(b)(6) stage, and the cited passage arose in that context:

> Rochon is not required, however, in order to state a claim of retaliation, to allege facts sufficient to negate the FBI's alternative explanations for its actions – whatever they may turn out to be. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000). On the contrary, in order to survive a motion to dismiss, "all [the] complaint has to say," *id.* at 1115, is "the Government retaliated against me because I engaged in protected activity." Rochon's complaint meets this liberal pleading standard.

*Rochon*, 438 F.3d at 1220. But the court in *Sparrow* was applying the "liberal pleading standard" derived from *Conley*, 355 U.S. at 45–46, so it is questionable whether *Sparrow* continues to serve as a guide. *See Sparrow*, 216 F.3d at 1114. Moreover, in the next paragraph, the *Rochon* opinion goes on to describe the facts that would show causation:

> Rochon unquestionably engaged in statutorily protected activity when he filed Title VII complaints against the FBI. And we have long held a "causal connection . . . may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse . . . action took place shortly after that activity." Here, Rochon claims the FBI [took action against him] around the time he and the Bureau settled his Title VII suit. . . . The district court erred, therefore, in concluding that Rochon failed "to [allege sufficient] facts to support a reasonable inference that the FBI acted with retaliatory or discriminatory motives."

438 F.3d at 1220, quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (1985).

action" because the acts occurred too far apart in time. Defs.' Mem. at 20. Plaintiff filed her EEOC charge in 1994. Even if one looks to the date the action was resolved in 2003, the time period between plaintiff's protected activity and the alleged adverse action in 2005 is far too long to support a presumption of causation based on temporal proximity. *See Hamilton v. Geithner*, 666 F.3d 1344, 1357–58 (D.C. Cir. 2012) (observing that the Supreme Court and D.C. Circuit have suggested that "a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation," but that there is technically no "bright-line three-month rule"). However, temporal proximity is not the only way to allege causation and, at this early stage, plaintiff has alleged just enough for her retaliation claim against OPM to survive a motion to dismiss.

Plaintiff claims that OPM, "mindful" that she "prevailed" in her 1994 EEOC Action, devised a plan of using four separate certificates that would not reach plaintiff's adjusted score so that plaintiff would not "benefit from any relief she was awarded as a result of her prevailing party status." *Menoken III* Compl. ¶¶ 40–43, 46. She alleges that "[t]he purpose and effect of the decision to use four certificates, instead of one, was to allow OPM to avoid going too deep into the Register to reach [p]laintiff's score," *id.* ¶ 48 and that the scheme succeeded in "depriving [her] . . . of a fair and equal opportunity to be considered for an ALJ appointment." *Id.* ¶ 49. Plaintiff's complaint also makes the conclusory allegation that OPM retaliated against her "by engaging in acts designed to ensure [p]laintiff would not be considered for an ALJ position in 2005 because she had prevailed in a Title VII claim against OPM." *Menoken III* Compl. at 8–9. Although plaintiff could have done a better job of articulating a causal connection – indeed, she does not even allege that any OPM decision maker involved with the HHS vacancies knew about her protected activity – she has done just enough to survive a motion to dismiss given the existing

case law in this district and the fact that she is proceeding *pro se*. The Court cautions plaintiff, though, that mere conclusory allegations of retaliatory animus will not be enough to sustain a claim at the summary judgment stage.

However, with regard to her retaliation claim against HHS, plaintiff has not pled sufficient facts to allow an inference of retaliation. Although she claims that OPM and HHS "worked closely" and that OPM "elicited the cooperation of HHS" to carry out its alleged scheme to deprive plaintiff of consideration for an ALJ position, *Menoken III* Compl. ¶¶ 37, 43, she never actually alleges that HHS knew that plaintiff initiated the EEOC Action that eliminated the discriminatory partner benchmark or that she had engaged in protected activity at all. Plaintiff simply says that OPM was required to inform HHS of the order that resulted from plaintiff's EEOC Action. *Id.* ¶ 39 ("OPM informed HHS of EEOC's discrimination finding in the [EEOC] matter."); *see id.* ¶ 22 ("HHS is deemed to have been aware of EEOC's discrimination finding at or around the time it used the ALJ Register in 2005."). Further, the complaint does not even include a conclusory allegation that HHS acted out of retaliatory animus. Therefore, plaintiff has failed to plead any facts that would allow the Court to draw the reasonable inference that HHS is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556.

Because plaintiff has alleged sufficient facts to state a retaliation claim against OPM, but has failed to do so with regard to its claim against HHS, the Court will deny defendants' motion against OPM and grant the motion as to HHS.

## CONCLUSION

The Court will grant defendants' motion to dismiss the retaliation claim against OPM in *Menoken II* since it is barred by the doctrine of *res judicata*, and it will dismiss the retaliation claim against SSA because it is barred by issue preclusion.

The Court will deny defendant's motion to dismiss plaintiff's discrimination claim against OPM and HHS, and will deny defendant's motion to dismiss plaintiff's retaliation claim against OPM in *Menoken III*. But the motion to dismiss the retaliation claim against HHS in *Menoken III* will be granted because plaintiff has failed to state a claim.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: August 11, 2017