**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

)
CASSANDRA M. MENOKEN,                                    )
)
             Plaintiff.                                    )
)
      v.                                    )      Civil Action No. 16-0083 (ABJ)
)
MARGARET WEICHERT                                    )
*Acting Director, United States Office of*            )
*Personnel Management, et al.*,                         )
)
           Defendants.                              )
)

---

## MEMORANDUM OPINION

*Pro se* plaintiff Cassandra M. Menoken filed this lawsuit against the United States Office of Personnel Management ("OPM") and the United States Department of Health and Human Services ("HHS"), alleging that they discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") when she was not selected to be an Administrative Law Judge ("ALJ") in 2005. Am. Compl. [Dkt. # 8]. Plaintiff challenges OPM's use of four "location-specific" certificates, listing eligible candidates for vacant ALJ positions, instead of one omnibus list that would have included a greater total number of candidates. She alleges that this practice had a disparate impact on African American candidates in general, and that OPM intentionally used this method to discriminate and retaliate against her in particular.

Pending before the Court is defendants' motion for summary judgment. Defs.' Mot. for Summ. J. [Dkt. # 37] ("Defs.' Mot."). Defendants argue that plaintiff has failed to come forward with any evidence of discrimination or retaliation. Mem. of P. & A. in Supp. of Defs.' Mot. [Dkt. # 37-1] ("Defs.' Mem."). Plaintiff opposes the motion, contending that defendants' evidence is

unreliable and that there are still factual issues in dispute. Pl.'s Mem. in Opp. to Defs.' Mot. [Dkt. # 41] ("Pl.'s Opp.").

As the Court cautioned in its ruling on the motion to dismiss in this case, "mere conclusory allegations . . . will not be enough to sustain a claim at the summary judgment stage." *Menoken v. McGettigan*, 273 F. Supp. 3d 188, 202 (D.D.C. 2017). Now we are at that stage, and after discovery, plaintiff has not mustered the evidence needed to support her claims. Thus, the Court will grant defendants' motion for summary judgment.

## BACKGROUND

### I. Factual Background

To become an ALJ, applicants undergo a competitive examination process administered by OPM. *See* 5 C.F.R. § 930.201; Defs.' Statement of Undisputed Material Facts [Dkt. # 37-2] ("Defs.' SUMF") ¶ 1.[1] In an initial screening, applicants must demonstrate that they satisfy a set of minimum professional qualifications, such as at least seven years of experience as an attorney engaged in administrative law matters and at least two years of experience at a senior level. *Qualification Standard for Administrative Law Judge Position*, U.S. Office of Personnel Management, https://www.opm.gov/policy-data-oversight/classification-qualifications/general-schedule-qualification-standards/specialty-areas/administrative-law-judge-positions/ (hereinafter "ALJ Qualification Standard"). Those applicants who pass the initial screening must take an

---

1    Plaintiff has objected to every one of defendants' undisputed material facts. *See* Pl.'s Resp. & Objections to Defs.' SUMF [Dkt. # 41-1] ("Pl.'s Objs. to Defs.' SUMF"). The Court notes that these objections are largely technical – plaintiff has objected to the form of the statement and the declarations that they rely on. For certain facts, plaintiff has admitted that she does not dispute its substance. Thus, the Court will cite the defendants' SUMF for those facts that are undisputed in substance in this section, and it will discuss plaintiff's concerns regarding defendants' evidence in the analysis section below.

examination, "the purpose of which is to evaluate the competencies/knowledge, skills, and abilities (KSAs) essential to performing the work of an Administrative Law Judge." *Id.*

After applicants complete the examination, OPM ranks them by score in an electronic database called the ALJ Register. 5 C.F.R. § 332.311, 332.401. The register also stores applicants' geographic preferences. *Id.*

When an agency seeks to hire ALJs, it submits a request to OPM. Using the ALJ Register, OPM identifies candidates whose geographical preferences match the agency's needs, and it then sends the agency "certificates of eligibles" listing the top-scoring candidates. Defs.' SUMF ¶ 4; 5 C.F.R. § 332.402. OPM generally provides at least three candidates from the register per vacancy. § 332.402. When selecting candidates from certificates, an agency must follow the "rule of three," which requires the agency to fill each vacancy from the three highest-scoring candidates on the certificate who have yet to be selected. 5 C.F.R. § 332.404. As a result, the agency cannot simply select any candidate who appears on a certificate, but it must generally proceed in score order.

In 1993, plaintiff took the ALJ examination. Pl.'s Opp. at 1, citing Am. Compl. [Dkt. # 8] ¶ 4. Her examination results, along with her identified geographic preferences, were maintained in the "1993 ALJ Register." Defs.' SUMF ¶ 3. This register was used to fill ALJ positions until it was retired in October 2007. *Id.* ¶ 5. In 2005, HHS sought to hire approximately forty-nine ALJs to staff the new Office of Medicare Hearings and Appeals in four different locations: Arlington, Virginia; Cleveland, Ohio; Miami, Florida; and Irvine, California. *Id.* ¶¶ 6–7. OPM responded by issuing four location-specific certificates of eligibles from the 1993 ALJ Register. *Id.* ¶ 8. Plaintiff had indicated that she was available for all four of the locations, but her name did not appear on any of the certificates, and she was not selected for an ALJ position. Am. Compl. ¶¶ 38, 49; Defs.' Mot. at 6 (indicating that plaintiff's score was lower than the lowest score

selected); Pl.'s Opp. at 1 (indicating that the parties agree that plaintiff was not considered for the ALJ vacancies in 2005).

## II.    Related Cases

There is a long history of prior litigation arising out of plaintiff's attempts to become an ALJ.  Because the previous cases were described in detail in the Court's decision granting and denying in part defendants' motion to dismiss, *McGettigan*, 273 F. Supp. 3d at 193–95, the Court will describe them only briefly here.

### A.  *Menoken v. OPM*, EEOC No. 100–95–7644X ("EEOC Action")

In 1994, plaintiff filed a formal charge with the EEOC against OPM for discriminating against African American and female applicants in its scoring of several components of the 1993 exam that she had taken.  Ex. 1 to Defs.' Mot. to Dismiss [Dkt. # 10-2] ("EEOC Order") at 3–4, 51.  She also alleged that OPM retaliated against her for pursuing the discrimination claim.  *Id.* at 4.  In 2000, the EEOC administrative judge ruled in plaintiff's favor on one of her discrimination claims, which concerned the "partner benchmark" in the "supplemental qualifications statement" ("SQS") portion of the ALJ examination.[2]  *Id.* at 63.  The benchmark awarded points to applicants who had been partners at large law firms.  *Id.*  The judge found that the benchmark "impermissibly create[d] disparate impact on grounds of race" and ordered OPM to "cease use of that benchmark until its use has been properly validated . . . or until the disparate impact disappears."  *Id.*

---

2    An applicant's final score is determined by combining the scores from the individual components of the exam, which are:  (1) the "Supplemental Qualifications Statement," where the applicant describes her qualification and accomplishments; (2) the "Written Demonstration," where the applicant is given a hypothetical case and asked to prepare a memorandum; (3) the "Personal Reference Inquiry," where the applicant identifies references who are asked to grade the applicants knowledge, skills, and abilities; and (4) the "Panel Interview," where the applicant is interviewed by a three-member panel.  EEOC Order at 6–7.

However, the judge rejected plaintiff's claim that the benchmark's usage had deprived her of an ALJ position, since the "record clearly and convincingly established that, even after taking into account the effects of the improper use by OPM of the discriminatory benchmark, the Complainant would not have been selected for an ALJ vacancy." Ex. 2 to Defs.' Mot. to Dismiss [Dkt. # 10-3] ("Relief Order") at 29–30. The judge rejected the remainder of plaintiff's claims. EEOC Order at 63.

In 2001, plaintiff appealed this administrative determination within the EEOC, alleging that OPM had failed to comply with the order to cease use of the partner benchmark and challenging the administrative judge's decision about her other claims. Ex. 3 to Defs.' Mot. to Dismiss [Dkt. # 10-4] ("EEOC Appeal"). In May 2003, the EEOC rejected her compliance challenge and affirmed the administrative judge's decision. *Id.* at 9. Plaintiff then sought reconsideration of the decision within the EEOC, *Menoken v. James*, EEOC Decision No. 05A30918, 2005 WL 38762, at *2 (Jan. 3, 2005), and she filed a related civil action in this court. *See Menoken v. Whipple*, 605 F. Supp. 2d 148 (D.D.C. 2009) ("*Menoken I*"). Because of the pending civil action, the EEOC denied the request for reconsideration. *James*, 2005 WL 38762 at *4.

### B. *Menoken v. Whipple*, 605 F. Supp. 2d 148 (D.D.C. 2009) ("*Menoken I*")

In the civil case arising out of the conclusion of the EEOC action, plaintiff alleged that OPM had not complied with the EEOC Order, and that several components of the ALJ selection process, including the Personal Reference Inquiry ("PRI") and SQS portions of the exam, unlawfully discriminated against African American and female applicants, in violation of Title VII. *Menoken I*, 605 F. Supp. 2d at 151. In 2009, the court granted summary judgment for OPM on all counts: it found that OPM had complied with the EEOC Order and corrected the

discrimination caused by the partner benchmark, and that plaintiff's evidence of disparate discrimination was insufficient to create a triable issue of fact. *Id.* at 152–55. Specifically, the court found that OPM "(1) ceas[ed] use of or reliance upon the partner benchmark when scoring completed but unscored ALJ applications; (2) review[ed] the scores of applicants on the 1993 ALJ Register; and (3) confirm[ed] that no applicants received five points on the basis of the . . . partner benchmark." *Id.* at 151–52.

### C. *Menoken v. Cobert, et al.,* No. 1:16-cv-0084 (D.D.C. 2016) ("*Menoken II*")

On January 15, 2016, plaintiff filed another complaint in this court against OPM and the Social Security Administration ("SSA"), this time alleging retaliation under Title VII. Compl. [No. 1:16–cv–0084, Dkt. # 1]. She claimed that in a 2001 selection of ALJs for the SSA, OPM and SSA used the discriminatory partner benchmark, "manipulat[ing] the ALJ selection process to deny plaintiff consideration for an ALJ position because she was a party in the 1994 EEOC Action." *McGettigan*, 273 F. Supp. 3d at 194. On August 11, 2017, in a decision covering both *Menoken II* and the instant case, the Court dismissed the claims in *Menoken II*. *Id.* at 192. It found that the claims were "precluded under the doctrines of *res judicata* and issue preclusion," *id.*, since *Menoken I* had already decided that the discriminatory benchmark did not enter into OPM's selection process. *Id.* at 196, 198.

### D. *Menoken v. Weichert, et al.*, No. 1:16-cv-0083 (D.D.C. 2016) (the instant case)

On the same date that plaintiff filed *Menoken II*, she filed a second complaint against OPM and HHS alleging Title VII discrimination and retaliation in the course of the 2005 selection of HHS ALJs. Compl. [Dkt. # 1]. On August 23, 2016, she amended her complaint. Am. Compl. [Dkt. # 8]. Plaintiff alleged that OPM's use of four location-specific certificates, as opposed to a single certificate spanning all four locations, discriminated against African American applicants,

including herself, and OPM retaliated against her for the 1994 EEOC Action when they did not

select her to be an ALJ in 2005. *Id.* ¶¶ 38–52.

On October 11, 2016, defendants filed a consolidated motion to dismiss the claims in this

case and *Menoken II*. Defs.' Mot. to Dismiss [No. 1:16–cv–0084, Dkt. # 11]; Mem. of P. & A. in

Supp. of Defs.' Mot. to Dismiss [No. 1:16–cv–0084, Dkt. # 11-1]; Defs.' Mot. to Dismiss [Dkt.

# 10]; Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss [Dkt. # 10-1]. On August 11,

2017, the Court granted the motion in part. *McGettigan*, 273 F. Supp. 3d at 203. It found that

plaintiff stated a disparate impact claim of discrimination against OPM and HHS, but it dismissed

the retaliation claim against HHS because plaintiff "failed to plead any facts" that would permit

the Court to reasonably infer that HHS had retaliated against her. *Id.*

The retaliation claim against OPM narrowly survived the motion: "Although plaintiff

could have done a better job of articulating a causal connection [between her EEOC Action and

her denial from an ALJ position] – indeed, she does not even allege that any OPM decision maker

involved with the HHS vacancies knew about her protected activity – she has done just enough to

survive a motion to dismiss given the existing case law in this district and the fact that she is

proceeding *pro se*." *Id.* at 202. Similarly, the Court deemed plaintiff's discrimination claims to

be "somewhat conclusory, but at [the motion to dismiss] stage, they [were] barely sufficient to

create an inference of causation," and therefore survived the motion. *Id.* at 199.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The party seeking summary judgment "bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

### I.      Plaintiff's technical objections to defendants' evidence are unavailing.

Plaintiff starts her opposition by critiquing the evidence that defendants have proffered in support of their motion. Pl.'s Opp. at 4–5. For the following reasons, the Court will not deny defendants' motion for summary judgment on this basis.

First, plaintiff objects to the declaration of Diane Hobbs because Hobbs did not work at OPM during the 2005 ALJ selection process, and so plaintiff argues that her testimony does not reflect her personal knowledge, as required by Federal Rule of Civil Procedure 56. *Id.* at 4; *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge."). But Hobbs does not contend that she personally witnessed any of the events in 2005. *See* Hobbs Decl. in Supp. of Defs.' Mot. [Dkt. # 37-3] ("Hobbs Decl.");

Defs.' Reply in Supp. of Defs' Mot. [Dkt. #44] at 3 ("Defs.' Reply"). Rather, Hobbs reviewed OPM records, and based on her personal knowledge of those records, she relays what those records show. *See* Hobbs Decl. Testimony based on "personal knowledge and on . . . records . . . with which [an employee's] duties required [her] to be familiar" is appropriate for consideration at summary judgment. *Continental Cas. Co. v. American Sec. Corp.*, 443 F.2d 649, 651 (D.C. Cir. 1970). As the Lead Human Resources Specialist at OPM's Administrative Law Judge Program Office, one of Hobbs's functions is to maintain the ALJ register and ensure proper issuing and auditing of the ALJ certificates. Hobbs Decl. ¶¶ 2, 3. Thus, Hobbs may review records regarding prior ALJ selections and testify as to what those records show.

Second, plaintiff disputes the validity of the affidavits of Gene Carter, Aff. of Gene Carter [Dkt. # 37-4] ("Carter Aff."), Judge Perry Rhew, Aff. of Judge Perry Rhew [Dkt. # 37-5] ("Rhew Aff."), and Nancy Ward, Aff. of Nancy Ward [Dkt. # 37-6] ("Ward Aff."), because she claims that they violate 28 U.S.C. § 1746, which sets forth circumstances in which unsworn declarations may be treated as sworn testimony. Pl.'s Opp. at 5. But, each of these affidavits was made under oath, and thus, they constitute sworn statements, and § 1746 does not apply. Carter Aff. at 1; Rhew Aff. at 1; Ward Aff. at 1. But even if the statements were unsworn so as to fall within the purview of the statute, defendants have not violated it. Section 1746 states that an unsworn declaration can be treated like a sworn declaration if the witness states, "in substantially the following form": "I declare . . . under penalty of perjury that the foregoing is true and correct." § 1746. In *Cobell v. Norton*, the D.C. Circuit held that a declaration that includes the disclaimer "to the best of [the declarant's] knowledge, information or belief" is sufficient under the statute. 391 F.3d 251, 260 (D.C. Cir. 2004). The statements at issue contain such a disclaimer. All of them state: "I solemnly affirm that the statement which follows is true and complete to the best of my knowledge and

belief." Carter Aff. at 1, 4; Rhew Aff. at 1, 5; Ward Aff. at 1, 4. Therefore, the affidavits are valid and may be relied upon in support of defendants' motion for summary judgment.

Finally, plaintiffs argue that defendants violated the Court's scheduling order because they "improperly set forth multiple statements of purported fact" within one paragraph, Pl.'s Opp. at 4 n.2, when the Scheduling Order required that each fact be numbered individually. Order [Dkt. # 19] at 3, ¶ 3. While this may have inconvenienced plaintiff and the Court, plaintiff provides no authority that such a technical deficiency is grounds for denial of the defendants' motion for summary judgment. Thus, plaintiff's objections to defendants' evidence are unavailing, and the Court may review defendants' evidence to make its determination.

## II.    Plaintiff's discrimination claims against OPM and HHS

### A.   Because plaintiff has not presented any statistical evidence of causation, her disparate impact claim fails.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Plaintiffs may establish racial discrimination in two ways, "by proving either that the employer acted with a discriminatory motive (a 'disparate treatment' claim), or that its action was the result of a process that, while apparently 'fair in form,' was 'discriminatory in operation' (a 'disparate impact' claim)." *Davis v. District of Columbia*, 925 F.3d 1240, 1248 (D.C. Cir. 2019), quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).

To prove disparate impact, a plaintiff "need not demonstrate illicit motive." *Figueroa v. Pompeo*, 923 F.3d 1078, 1085 (D.C. Cir. 2019). Rather, plaintiff's "initial burden is to identify the specific employment practice allegedly causing a disparate effect . . . and to make 'a threshold showing' of a 'significant statistical disparity' caused by that practice." *Id.*, quoting *Ricci v. DeStefano*, 557 U.S. 557, 587 (2009). Such a showing requires "statistical evidence of a kind and

degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).

Where a plaintiff has not put forth the statistical evidence necessary to show causation, a disparate impact claim cannot survive summary judgment. *See Figueroa*, 923 F.3d at 1086 (affirming summary judgment in favor of the defendant on a disparate impact claim where plaintiff pointed to "non-statistical evidence" in his attempt to prove causation); *Latson v. Sessions*, 239 F. Supp. 3d 163, 178 (D.D.C. 2017) (granting summary judgment in favor of the defendant on a disparate impact claim because the plaintiff "failed to introduce statistical evidence"); *Martin v. District of Columbia*, 78 F. Supp. 3d 279, 314 (D.D.C. 2015) (granting summary judgment in favor of the defendant on a disparate impact claim because the plaintiff "failed to introduce statistical evidence demonstrating causation").

In this case, plaintiff alleged that the use of location-specific certificates, rather than one omnibus certificate, disparately impacted African American applicants by disproportionately disqualifying them from consideration for ALJ positions. Am. Compl. ¶¶ 44–48. She contends that African American candidates tended to score lower on the examination, so the use of location-specific certificates meant that fewer names – and thus fewer African American names – would appear on any individual list for selection. *Id.* ¶¶ 34–35. But now that we have reached the summary judgment stage when evidence must be adduced, she has come forward with no statistical evidence demonstrating that African American candidates tended to score lower, or that African Americans were disproportionately underrepresented on location-specific certificates when they would have been included on omnibus certificates.

In fact, plaintiff has not put forward *any* evidence relevant to her disparate impact theory. The exhibits she submitted to the Court include a letter from OPM responding to a document request, *see* Oct. 23, 2001 Letter, Ex. A to Pl.'s Opp. [Dkt. # 41-2] ("Doc. Request Ltr."); her own deposition in this case, Dep. of Cassandra M. Menoken (Mar. 5, 2018), Ex. B to Pl.'s Opp. [Dkt. #41-3] ("Pl.'s Dep."); and a decision from the EEOC affirming the agency's dismissal of her complaints. *Menoken v. Astrue*, Appeal No. 120054405 (July 26, 2007), Ex. C to Pl.'s Opp. [Dkt. # 41-4] ("EEOC Appeal").[3] None of these exhibits lend support to her claim of disparate impact discrimination.

In plaintiff's deposition, she stated that the basis for her allegation that African American candidates tended to cluster at the lower ranks of the register due to lower examination scores was the "evidence in the record – in the Menoken I record." Pl.'s Dep. at 22:1–16. She testified that exhibits in the *Menoken I* matter would corroborate "[a] number of the assertions that [she has] made in this complaint." Pl.'s Dep. at 25:25–26:2. But, in response to the motion for summary judgment, she has not pointed the Court to any specific exhibits or records unearthed in the *Menoken I* case.

Throughout the discovery process, the Court emphasized that plaintiff was entitled to seek discovery of the list of ALJ candidates as it existed on the register in January 2005; the candidates' scores; and the race of the candidates if that information was in the agency's possession, custody, or control. *See* Status Conf. Tr. [Dkt. # 20] (Sept. 18, 2017) at 8:6–16, 11:9–12:4, 18:6–10; Status Conf. Tr. [Dkt. # 28] (Mar. 8, 2018) at 5:12–17, 9:3–6. Defendants informed the Court that race

---

3       This EEOC decision was issued in response to a complaint plaintiff filed against the Social Security Administration regarding the 2001 ALJ Selections at the SSA. EEOC Appeal. The judge dismissed the complaint because the 1994 EEOC action precluded them. The Order attached here affirms that dismissal. *Id.*

information was unavailable, and that the agency did not keep such information, although plaintiff maintained that federal regulations required the agency to collect it. Mar. 8 Tr. at 9:19–10:1, 12:21–14:25. And so, on March 8, 2018, the Court advised plaintiff:

> The claim survived because you articulated a basis for a disparate impact claim. But then the onus falls to you to prove it. If [defendants] don't maintain the statistics that you're asking for, you may not be able to prove it. If they're supposed to maintain the statistics that you're asking for, then that's a different question as to who's at fault for the failure of that information to exist.

*Id.* at 15:4–10. Plaintiff has neither provided the Court with any statistics in support of her claim, nor has she made any argument or pointed to any regulation that OPM was obligated to maintain such statistics but failed to do so.

Since plaintiff has not presented any evidence of a statistical disparity to support causation in her disparate impact discrimination claim, no reasonable juror could find for plaintiff, and defendants are entitled to summary judgment on this count.

### B. Plaintiff's disparate treatment claim fails because she does not submit evidence showing that she was qualified for the position.

Under a disparate treatment theory, an employee "seeks to prove that an employer intentionally 'treats some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Segar v. Smith*, 738 F.2d 1249, 1265 (D.C. Cir. 1984), quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). "'Proof of illicit motive is essential,' and the employee 'at all times' has the burden of proving 'that the defendant intentionally discriminated against' her." *Figueroa*, 923 F.3d at 1086. "[I]llicit motive may be inferred from a sufficient showing of disparity between members of the plaintiff class and comparably qualified members of the majority group." *Segar*, 738 F.2d at 1265–66 (observing that both a disparate impact and disparate treatment analysis may be applied to a set of facts because a "pattern or

practice disparate treatment challenge" may implicate a disparate impact analysis). Plaintiff's showing on this issue falls short in several respects.

First, plaintiff puts forward little evidence of discriminatory intent. In her deposition, she testified that OPM intended to discriminate against her and other African Americans:

> This is an intentional discrimination case. So it was no accident that, when OPM made this decision to depart, they knew – OPM knew that African Americans were on the register at that time whose scores had never been changed. The discriminatory aspect of the scoring that – that impacted me and other African Americans continued to impact me and other African Americans. There's no way OPM didn't know that when those certificates were issued to – to HHS the way they were. So no – I'm not alleging anybody sat down and said, "I hate black people." That's – that is not my theory. It's intentional discrimination. You knew what the effect would be when you departed from the normal procedure because OPM knew. Maybe HHS knew. I don't know. I know OPM knew that the scores on that register had never been corrected. There had never been an attempt to correct the scores. So those scores of African Americans were still discriminatory. And OPM used those scores to fill those vacancies at HHS.

Pl.'s Dep. at 50:24–51:16.

Plaintiff spends much of her deposition explaining that the basis for her discrimination claim is her belief that her and other African American candidates' scores on the 1993 ALJ Register were "tainted" by OPM's alleged refusal to correct for the discriminatory impact identified by the EEOC Administrative Judge in 2000. Pl.'s Dep. at 52:12–53:4, 54:13–55:22. Furthermore, in her statement of undisputed facts, plaintiff asserts that whether the EEOC failed to bar OPM's use of the partner benchmark is still an active issue. *See* Pl.'s Objs. to Defs.' SUMF at 13–14.

But, as the Court found in its decision granting in part defendants' motion to dismiss, this issue is barred by issue preclusion. *McGettigan*, 273 F. Supp. 3d at 203. Plaintiff already raised and the court already decided the issue of OPM's compliance with the EEOC Order in *Menoken I.* 605 F. Supp. 2d at 152. In that case, the court granted summary judgment in favor of OPM

because "OPM ha[d] provided abundant admissible evidence substantiating its full compliance" with the EEOC order. *Id.* Plaintiff attempts to distinguish the issues by arguing that her relief in *Menoken I* pertained only to the "supplemental qualification statement" portion of the examination, whereas in this case she asserts that the issue is about the "personal reference inquiry" (PRI) portion of the examination. Pl.'s Opp. at 7. But, the *Menoken I* court determined that the PRI portion of the examination was not discriminatory, and so plaintiff cannot relitigate the question. *See Menoken I*, 605 F. Supp. 2d at 154 ("Menoken produced no evidence of a disparate impact in the . . . PRI.").

When a plaintiff lacks direct evidence of the employer's intent, courts often use the three-step framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Figueroa*, 923 F.3d at 1086. Under this framework, after the employee establishes a *prima facie* case of discrimination, the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its action; if it does so, the burden shifts back to the employee who must prove that the reason stated was mere pretext and that she suffered intentional discrimination. *McDonnell Douglas*, 411 U.S. at 802–04; *Figueroa*, 923 F.3d at 1086. However, when the employer properly presents a legitimate, nondiscriminatory reason, the District Court "need not—*and should not—* decide whether the plaintiff actually made out a prima facie case," and should instead expend its limited resources on analyzing the third prong. *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Particularly at summary judgment, the "general expectation [is] that . . . the District Court will focus on the third prong." *Figueroa*, 923 F.3d at 1086.

Focus on the third prong of the *McDonnell-Douglas* analysis, *i.e.*, the evidence of pretext, is appropriate "only if the parties properly move past the second step." *Id.* at 1087. To do that, "an employer at the second prong must proffer admissible evidence showing a legitimate,

nondiscriminatory, clear, and reasonably specific explanation for its actions." *Id.* at 1092. The D.C. Circuit has recently laid out four factors that can be used to determine whether an employer's evidentiary proffer is adequate: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding)"; (2) if the factfinder believes the evidence, it "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) the "nondiscriminatory explanation must be . . . facially credible in light of the proffered evidence"; and (4) the evidence must present a "clear and reasonably specific explanation" such that the employee has "a full and fair opportunity to attack the explanation as pretextual." *Id.* at 1087 (citation and quotation marks omitted). By contrast, "offering a vague reason . . . is the equivalent of offering no reason at all." *Id.* at 1092.

Defendants have offered evidence to satisfy the factors set forth in *Figueroa* and shift the responsibility back to plaintiff to prove pretext. They submit that they used location-specific certificates because "there were four locations where HHS wanted to hire ALJs, and HHS submitted four [requests]." Defs.' Mem. at 14. Defendants have provided the sworn declaration of Diane Hobbs, the Lead Human Resources Specialist in the Administrative law Judges Program Office at OPM, as well as documents showing that OPM issued location-specific certificates on other similar occasions when an agency seeking ALJs had submitted location-specific requests. *See* Hobbs Decl. ¶ 19; 2003 Location-Specific Certificates Issued to Dep't of Labor, Exs. 15–16 to Hobbs Decl. [Dkt. # 37-3]; Suppl. Hobbs Decl. ¶¶ 20–22; 2004 & 2006 Location Specific Certificates Issued to Dep't of Labor, Sealed Exs. 1–4 to Suppl. Hobbs Decl. [Dkt. # 45-1]. A factfinder could reasonably find from this evidence that OPM was motivated by a nondiscriminatory and credible reason, and this explanation is sufficiently clear to put plaintiff on notice of the explanation she must refute.

Under *McDonnell-Douglass*, the burden then shifts back to plaintiff to show that the stated reason was mere pretext. To do so, plaintiff must "produce[] evidence sufficient for a reasonable jury to find that the employer's stated reason was not the actual reason and that the employer intentionally discriminated against [her] based on [her] race." *Brady*, 520 F.3d at 495.

Plaintiff points to no evidence that the proffered reason was not the actual reason. In her opposition, plaintiff suggests that defendants may be lying: "[i]t is curious that Defendants are able to articulate the reason for the decision at issue in this case, but were somehow unable or unwilling to articulate the name of the person who made the decision, when asked in discovery." Pl.'s Opp. at 6 (emphasis omitted). But, plaintiff offers no evidence to support this. If the employer's stated belief "about the underlying facts that formed the predicate for the employment decision . . . is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying." *Brady*, 520 F.3d at 495 (citations omitted). In light of the evidence defendants submit, the proffered reason is reasonable, and so there is no basis to conclude that defendants are lying.

In her deposition, plaintiff states that she "put examples in the HHS record of the types of certificates I was familiar with, where there were multiple locations . . . that one certificate would cover all locations." Pl.'s Dep. at 30:21–24. But plaintiff does not attach these certificates, nor does she testify that, when presented with multiple location-specific requests, OPM typically issued one omnibus certificate. Thus, plaintiff has not carried her burden to show that defendants' stated reason was pretext for discrimination, and her disparate treatment discrimination claim fails.

The Court acknowledges, though, that the Hobbs declaration also states:

> At the time, ALJ[ ] [Program Office] had no set policy about whether it would issue an omnibus certificate or location specific certificates from the ALJ Register. In addition, there were no laws, rules, or regulations prohibiting the use of location specific certificates. A review of the types

> of certificates issued by OPM during the 2003-2007 time period shows that OPM issued both omnibus and location specific certificates. . . . It appears that such certificates were issued depending on the type of request submitted by the agency.

Hobbs Decl. ¶ 19. Thus, defendant cannot point to a clear policy establishing rules regarding when to use each method. By asserting that "[i]t appears that such certificates were issued depending the type of request submitted by the agency," defendants' witness is largely making an assumption based on past practice and revealing that she lacks personal knowledge as to why location-specific certificates were issued in this instance. In the event this reliance on inferences drawn from prior practice is not sufficient to shift the burden to the plaintiff under the *Figueroa* analysis of the *McDonnell-Douglas* framework, the Court would be required to consider the strength of plaintiff's *prima facie* case alone. Given the state of the evidence supplied by the defendant, the Court will undertake this analysis as well in an abundance of caution, and here too, it finds that plaintiff has failed to meet her burden.

In a non-selection case, an employee may establish a *prima facie* case of racial discrimination by showing: "(i) that [s]he belongs to a racial minority; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite [her] qualifications, [s]he was rejected; and (iv) that, after [her] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas*, 411 U.S. at 802.

Here, plaintiff has not established a *prima facie* case because she has not shown that she was qualified for the job. Plaintiff offers no evidence of her qualifications and examination score as compared to others that were selected for the position. Defendants, on the other hand, have come forward with evidence showing that plaintiff's score was too low to be considered for an ALJ position. Plaintiff's score on the 1993 examination, as it appeared in the 2005 Register, was

88.4.  Hobbs Decl. ¶ 11, citing Sealed Ex. 12 to Hobbs Decl. [Dkt. # 39] at 9.  Defendants prepared a mock omnibus certificate to show who would have been certified in January 2005 if OPM had created the single certificate plaintiff claims was legally required to protect her rights.  Hobbs Decl. ¶¶ 12–13, citing Sealed Ex. 13 to Hobbs Decl. [Dkt. # 39] ("Mock Certificate").  The lowest score on this certificate was 90.4.  *Id.*  Thus, plaintiff would not have even appeared on an omnibus certificate.  Indeed, there were 720 candidates with higher scores than plaintiff on the register at that time, and an omnibus certificate listing three candidates for each of the forty-nine vacancies would have included the top 147 of those.  Hobbs Suppl. Decl., Ex. 1 to Defs.' Reply [Dkt. # 44-2] ("Hobbs Suppl. Decl.") ¶ 17, citing Sealed Ex. 12 to Hobbs Decl. at 1–9.  In April 2005, HHS was unable to fill all of the ALJ vacancies from the location-specific certificates, and it requested additional names.  Hobbs Decl. ¶¶ 7, 8, 16, citing Sealed Exs. 5–7 to Hobbs Decl. [Dkt. # 39].  At that point, there were still 630 candidates with higher scores than plaintiff, and the cut off score for the ALJ positions was 89.7.  Hobbs Suppl. Decl. ¶¶ 16, 18.  Again, plaintiff's score was too low to be considered.

Plaintiff raises concerns about the validity of the mock omnibus certificate, because defendants generated it using the ALJ Register as it existed on January 11, 2005, one week before the actual location-specific certificates were issued.[4]  Pl.'s Opp. at 5.  Because "the ALJ register changes on a near daily basis as information is updated," Doc. Request Ltr. at 2, plaintiff contends that the January 11 mock certificate is not accurate as to who would have appeared on it on January 18.  Pl.'s Opp. at 5.  But, defendants have submitted sworn testimony stating that there were no ALJ selections between January 11 and January 18 that would have removed applicants from the

---

4       Defendants did this because OPM does not have copies of the 1993 ALJ register as it existed on January 18, 2005.  The closest date that they had a copy of the register was January 11, 2005.

register, creating space for plaintiff to move up. Defs.' Reply at 5–6, citing Hobbs Suppl. Decl. ¶¶ 12, 16–17. Defendants acknowledge that new candidates may have taken the examination and may have been added to the register between these two dates, but adding new candidates to the register would not have increased plaintiff's chance of appearing on the certificate: If the new candidates scored higher than she did, it would have moved her further down, and if new candidates scored lower than she did, there would have been no effect. Defs.' Reply at 6 n.3. Plaintiff submits no evidence to rebut this.

Furthermore, defendants have submitted evidence demonstrating that individuals involved in the ALJ selection process did not know who plaintiff was or know her race. Carter Aff. at 2; Rhew Aff. at 2; Ward Aff. at 2. "It is axiomatic that a defendant cannot be found to have discriminated against a plaintiff on the basis of race where the defendant had no knowledge of the plaintiff's race." *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 21 (D.D.C. 2009); *see also Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 300 (D.C. Cir. 2015) (finding no discriminatory intent because the supervisors who disciplined the plaintiff did not know his race).

Thus, defendants' motion for summary judgment is granted as to plaintiff's discrimination claim against OPM and HHS.

### III. Plaintiff has not presented any evidence of causation for her retaliation claim, so that claim fails as well.

Plaintiff's remaining claim alleges that OPM retaliated against her for her 1994 EEOC Action when it did not select her to an ALJ position in 2005. Title VII prohibits employers from "'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006), quoting 42 U.S.C. § 2000e-3(a). "Title VII retaliation claims must be proved according to

traditional principles of but-for causation . . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

Plaintiff maintains that OPM "devised a plan" to exclude her from an ALJ appointment by issuing location-specific certificates. Am. Compl. ¶ 43. She claims that "OPM was determined . . . not to allow [her] to benefit from any relief she was awarded" as a result of the discrimination finding in her favor. *Id.* ¶ 42. Defendants counter that it issued location-specific certificates to respond to the location-specific requests submitted by HHS and not out of any retaliatory intent. Defs.' Mem. at 14. Defendants further argue that plaintiff cannot show that using the location-specific certificates caused her non-selection, because she "would not have appeared on an omnibus certificate any more than she would have been on the location-specific certificates." Defs.' Mem. at 11.

The Court agrees with defendants. Plaintiff has not pointed to any evidence of a causal link between the use of location-specific certificates and her EEOC Action. While she testified that "it would certainly not be outside the realm of possibilities that OPM" would have issued location-specific certificates just to avoid having her name appear on them, Pl.'s Dep. at 44:16–22, 33:7–9, she could not articulate a basis for this speculation. *Id.* at 44:16–22. She does not point to any evidence that anyone involved with the 2005 selection was aware of her prior protected activity, and the individuals involved in the process have averred that they did not know who Menoken was and that she had filed an EEOC claim against OPM and HHS. Carter Aff. at 2; Rhew Aff. at 2; Ward Aff. at 2. Furthermore, as stated above, defendants have demonstrated that even if OPM had used the omnibus certificate, plaintiff still would not have been hired because

her score was too low.  *See* Hobbs Decl. ¶¶ 13–14 ("The lowest score on this mock omnibus certificate . . . was 90.4.  Plaintiff was not listed . . . because her score of 88.4 was too low.").

Defendants have provided evidence showing no retaliation occurred, while plaintiff has not submitted any evidence to support her claim.  Thus, no reasonable fact finder could find in plaintiff's favor.  Therefore, defendants' motion for summary judgment is granted as to plaintiff's retaliation claim against OPM.

## CONCLUSION

For the reasons stated above, the Court will grant defendants' motion for summary judgment.  A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  September 16, 2019